COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,[*] Judge Annunziata and
          Senior Judge Duff
Argued at Alexandria, Virginia


MICHAEL TRACY WATKINS
                                        OPINION BY
v.        Record No. 0649-96-4    JUDGE ROSEMARIE ANNUNZIATA
                                      JANUARY 20, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N.A. Kendrick, Judge

              Clark E. Broderson for appellant.

              Robert H. Anderson, III, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General; Ruth Ann Morken, Assistant Attorney
              General, on brief), for appellee.



     This criminal appeal presents questions concerning the

voluntariness of appellant's waiver of counsel, appellant's right

to speedy trial, and the sufficiency of the Commonwealth's

evidence.  For the reasons that follow, we affirm.

     Following a jury trial, Michael Tracy Watkins was convicted

of burglary, grand larceny, receiving stolen property and

possession of burglarious tools.  He was sentenced to a total of

ten years incarceration and was fined $2,000.  Appellant

represented himself at trial.

     The primary issue before us is whether appellant knowingly,

voluntarily and intelligently waived his right to counsel.  "If

the accused has not competently and intelligently waived that

---

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or liberty."  Edwards v. Commonwealth, 21 Va. App. 116, 123, 462 S.E.2d 566, 570 (1995) (citing Johnson v. Zerbst, 304 U.S. 458, 468 (1938)).

## I. WRIT OF CERTIORARI

After review of the record originally presented, we were unable to determine whether appellant's waiver of counsel was knowingly, voluntarily and intelligently made.  The record contained an order of the trial court reflecting the events of November 22, 1995, which stated that, on that date, appellant's court-appointed counsel withdrew and appellant proceeded pro se.[1]  While the order further stated that the motions taken up that day were "more specifically set forth in the stenographic record of this case," the record transmitted to this Court contained no transcript of the November 22, 1995 hearing or any statement of facts describing the events of that day.

Finding that resolution of the issue before us depended on our review of the transcript from the November 22, 1995 hearing, we issued a writ of certiorari, pursuant to Code § 8.01-675.4, to compel the clerk of the trial court to forward the missing transcript.[2]  The Commonwealth filed a motion to vacate the writ,

---

[1]The order reflected that another attorney was appointed to assist the defense in a procedural capacity.

[2]Code § 8.01-675.4 provides that this Court may:

in any case, after reasonable notice to

2

alleging that Code § 8.01-675.4 is inapplicable because appellant failed to make the missing transcript part of the record on appeal, as defined by the Rules of Court.

The Commonwealth contends that Code § 8.01-675.4 allows the Court to order only portions of the appellate record as defined by the Rules of Court. See Rules 5A:7 and 5A:8. The Commonwealth's contention finds no support in the recent cases addressing Code § 8.01-675.4 or the parallel provision applicable in the Supreme Court, Code § 8.01-673(A). See Crumble v. Commonwealth, 2 Va. App. 231, 233, 343 S.E.2d 359, 360 (1986); Buck v. Commonwealth, 247 Va. 449, 453 n.*, 443 S.E.2d 414, 416 n.* (1994). In Crumble, a panel of this Court exercised its authority under Code § 8.01-675.4 and "directed the clerk of the trial court to cause that portion of the trial court record consisting of the court reporter's recordation of closing arguments to be transcribed and forwarded to us for review." In Buck, the Supreme Court noted that the jury list at issue in the case was "not part of the record on appeal until . . . a writ of certiorari to the trial court pursuant to Code § 8.01-675.4 to add the list to the record on appeal . . . [was] granted." Both Crumble and Buck exemplify the Supreme Court's recitation of the general rule that certiorari will lie to "enlarge" the record on

counsel in the appellate court, award a writ of certiorari to the clerk of the trial court and have brought before it, when part of a record is omitted, the whole or any part of such record.

3

appeal.

> After the record has been transmitted to this Court pursuant to [the Rules of Court] and an appeal has been granted, the record on appeal cannot be enlarged except by our award of a writ of certiorari under Code § 8.01-673.

Godfrey v. Commonwealth, 227 Va. 460, 465, 317 S.E.2d 781, 784 (1984); see also Town of Narrows v. Clear-View Cable TV, Inc., 227 Va. 272, 275 n.2, 315 S.E.2d 835, 837 n.2 (1984); Old Dominion Iron & Steel Corp. v. Virginia Elec. & Power Co., 215 Va. 658, 660, 212 S.E.2d 715, 718 (1975).[3]

Our decision to compel the production of the missing transcript in this case is fully supported in the case law of both this and the Supreme Court. Our ruling is also in accord with the principle that the judgment of the trial court is presumed correct and the burden is on the appellant to submit to the appellate court a record that enables the court to determine whether there has been an error. Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993).

The Commonwealth's position initially fails to acknowledge

---

[3]Contrary to the Commonwealth's suggestion, Godfrey and Old Dominion Iron were reversed because a writ of certiorari was not employed to enlarge the record, not simply because the record itself was enlarged. The rule of those cases precludes the enlarging of the record by means other than the writ of certiorari; it does not preclude the enlarging of the record per se. To the extent Washington v. Commonwealth, 216 Va. 185, 188-89, 217 S.E.2d 815, 819-20 (1975), can be read to support a contrary conclusion, as the Commonwealth suggests, the Supreme Court's more recent recitation of the scope of the writ overrules it, albeit implicitly. We further note that Washington is not cited in any of the Supreme Court's more recent cases addressing the writ.

4

that the issue before us is anything but typical.  "The right to counsel . . . is so fundamental to the human rights of life and liberty that its waiver is never presumed, and the `courts indulge every reasonable presumption against waiver.'"  Church v. Commonwealth, 230 Va. 208, 215, 335 S.E.2d 823, 827 (1985); see also Sargent v. Commonwealth, 5 Va. App. 143, 149, 360 S.E.2d 895, 898 (1987).  Waiver of the right to counsel cannot be assumed from a silent record.  Church, 230 Va. at 215, 335 S.E.2d at 828; Sargent, 5 Va. App. at 149, 360 S.E.2d at 899 ("'Presuming waiver from a silent record is impermissible.  The record must show that an accused was offered counsel but intelligently and understandingly rejected the offer.  Anything less is not waiver.'" (quoting Carnley v. Cochran, 369 U.S. 506, 516 (1962))).  Moreover, when the issue of waiver of counsel is presented, the Commonwealth bears the burden "to show by the record that an accused who proceeds pro se has competently, intelligently, and understandingly waived his right to counsel."  Edwards, 21 Va. App. at 123-24, 462 S.E.2d at 570.

Contrary to the Commonwealth's assertion, therefore, the onus of producing the missing transcript in the present case lies with the Commonwealth, not appellant.  Church, 230 Va. at 216, 335 S.E.2d at 828 ("The right to assistance of counsel is so fundamental to the integrity of the criminal justice process that we must reverse because of the fortuitous omission of that part of the record which might have demonstrated the competence of the

5

defendant's waiver.").[4]  In the absence of the November 22, 1995 transcript, the record fails to establish that appellant knowingly, intelligently and understandingly waived his right to counsel.  We issued the writ to ensure that justice was served. The Commonwealth's motion is denied.[5]

## II. Waiver of Counsel

In Harris v. Commonwealth, 20 Va. App. 194, 197, 455 S.E.2d 759, 760 (1995), we held that "[t]he law requires more than the court's bare assumption that the defendant was aware of his right to counsel and knew of the pitfalls of self-representation." "[A] party relying on such a waiver must prove its essentials by 'clear, precise and unequivocal evidence.  The evidence must not leave the matter to mere inference or conjecture but must be certain in every particular.'"  Church, 230 Va. at 215, 335 S.E.2d at 827 (quoting White v. Commonwealth, 214 Va. 559, 560, 203 S.E.2d 443, 444 (1974)).

"Whether a waiver is voluntary and competent depends upon the particular circumstances of each case, including the

---

[4]The Commonwealth suggests that Church is distinguishable because the proceeding in Church, unlike the relevant proceeding here, was unrecorded, and, thus, a transcript "could not have been prepared for inclusion in the record."  We find that a distinction without meaning.  The Commonwealth's argument fails to address the availability of a Statement of Facts to reflect an unrecorded hearing.  Moreover, as the Supreme Court's decision in Church makes clear, the relevant consideration is not why the record is silent, but that it is.

[5]The Commonwealth's motion to strike appellant's reply brief, as well as appellant's various motions, are also denied.

defendant's background, experience, and conduct, but no particular cautionary instruction or form is required." Church, 230 Va. at 215, 335 S.E.2d at 828 (citations omitted); see also United States v. Doe, 743 F.2d 1033, 1038 (4th Cir. 1984). While a formal, specific inquiry on the record regarding the capability of the accused to understand and decide the issue of waiver may be the wiser practice, the absence of such a procedure is not fatal. See United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997); Edwards, 21 Va. App. at 124-25, 462 S.E.2d at 570-71 (citing North Carolina v. Butler, 441 U.S. 369, 374-75 (1979), which upheld an "implicit waiver" upon considering the whole record); Kinard v. Commonwealth, 16 Va. App. 524, 527, 431 S.E.2d 84, 86 (1993) (quoting Doe, 743 F.2d at 1038). The required determination can be made upon considering the record as a whole.

Here, the appellant contends the trial court erred by not having him sign a form reflecting the waiver of his right to counsel and further erred by not placing on the record the "required inquiry as to defendant's need for counsel or determine on the record the defendant's decision to waive counsel was knowing and voluntary." He also contends the trial court failed to make him aware of the dangers and disadvantages of self-representation. We find appellant's argument to be without merit.

"'[W]hile it is preferable practice for trial courts to warn an accused of the risks of self-representation, we believe that a

7

cautionary instruction is only one of the 'facts and circumstances' relevant to a determination of the validity of a waiver of counsel.'" Edwards, 21 Va. App. at 125, 462 S.E.2d at 571 (quoting Superintendent v. Barnes, 221 Va. 780, 784, 273 S.E.2d 558, 561 (1981)). Furthermore, the absence of a written waiver is not determinative of the question.[6] See Edwards, 21 Va. App. at 124, 462 S.E.2d at 570. Rather, applying the principles set forth in Barnes, Kinard, and Edwards, our review of the record as a whole supports the conclusion that appellant's waiver of his right to counsel was knowing, intelligent and voluntary.

---

[6]Code § 19.2-160 provides, in relevant part:

> If the charge against the accused is a crime the penalty for which may be incarceration, and the accused is not represented by counsel, the court shall ascertain by oral examination of the accused whether or not the accused desires to waive his right to counsel.
> In the event the accused desires to waive his right to counsel, and the court ascertains that such waiver is voluntary and intelligently made, then the court shall provide the accused with a statement to be executed by the accused to document his waiver. . . . Any executed statement herein provided for shall be filed with and become a part of the record of such proceeding.
> Should the defendant refuse or otherwise fail to sign . . . the statement[] . . . the court shall note such refusal on the record. Such refusal shall be deemed to be a waiver of the right to counsel, and the court, after so advising the accused and offering him the opportunity to rescind his refusal shall, if such refusal is not rescinded and the accused's signature given, proceed to hear and decide the case.

8

Although the trial court did not make the searching, formal inquiry that we would prefer, the record before the trial court allowed the court to determine that appellant's waiver of counsel was knowing, voluntary and intelligent. At the hearing on November 22, 1995, at which appellant was present, appellant's counsel told the court that appellant wished to represent himself. The court reviewed the nature of the charges, and appellant's counsel discussed his preparation for trial. Appellant personally told the court that he was ready to argue his motions but that he did not want the court to hear the motions filed by his counsel.

Our confidence in appellant's understanding of the charges brought against him emerges from the fact that he prepared motions for the November 22 hearing in which he sought to have the indictments quashed. While there is no direct evidence of appellant's educational background or his understanding of the judicial process, the record makes clear that he had the capacity to and did, in fact, appreciate the judicial process and the nature of the proceedings he was electing to conduct pro se. Prior to his waiver of counsel, appellant personally drafted pretrial motions without the aid of his attorney, extensively citing and arguing case law and the attendant analysis of the facts. Among the many motions appellant personally drafted and filed with the court were a motion to suppress the evidence seized from his vehicle and motions to dismiss the charges based

9

on claimed violations of his constitutional right to a speedy trial, his right to a preliminary hearing, and his rights under the agreement on detainers. Appellant also drafted several discovery motions, including a motion to subpoena witnesses and a motion for funds for an investigator. These motions make it clear that he understood the importance of conducting discovery in preparation for his trial. Appellant's extensive experience with the motions he filed himself and those filed by his counsel demonstrates that appellant understood the nature of the charges brought against him, the responsibilities imposed on him while representing himself, and the value of being represented by counsel.

Finally, appellant requested the court to appoint another attorney in an advisory capacity, reflecting his understanding of the value to his defense of having specialized legal knowledge and ability in the trial of the charges against him and his understanding of the consequences of his waiver. Appellant further stated that he was "ready for trial" and did not want a continuance. The court granted appellant's request to represent himself in the following colloquy:

> THE COURT: If [appellant's counsel] Mr. Stith wants out of the case and his client wants him out of the case I am inclined to grant Mr. Stith's motion.
> [THE COMMONWEALTH]: I don't have a problem with that.
> THE COURT: I will grant counsel's motion.
> THE DEFENDANT: That's appropriate.

Finally, the court granted appellant's request for advisory

counsel and stated to appellant's new counsel:

> It may develop that you would be counsel in the case, but at least at this point you would be appointed to assist the defendant.
>      I think in every respect he needs a lawyer.  He is not a lawyer himself.  I would hope that he will be able to recognize your skills and that they could be put to use to his benefit.

While the better practice would have been for the trial court to have conducted a systematic review of the defendant's competent, knowing and voluntary waiver of this important right, we find under the circumstances of this case that appellant's waiver was knowing, voluntary and intelligent.

### III. APPELLANT'S RIGHT TO SPEEDY TRIAL

There is no dispute that August 31, 1995 is the date of appellant's "arrest" for purposes of Code § 19.2-243, and of his "arrival" in Virginia, for purposes of the agreement on detainers.  Code § 53.1-210, Art. IV(c).  Further, there is no dispute that Code § 19.2-243 required the Commonwealth to try appellant within five months of his arrest and that the agreement on detainers required the Commonwealth to try appellant within 120 days of his arrival in Virginia.  Appellant was tried on February 5, 1996, 158 days, or five months and six days, following his arrest and arrival in Virginia.

Both Code § 19.2-243 and the agreement on detainers provide for tolling of the time limits they prescribe.  Under Code § 19.2-243(4), the five-month prescription is tolled upon the

> continuance granted on the motion of the accused or his counsel, or by concurrence of

11

>           the accused or his counsel in such a motion
>           by the attorney for the Commonwealth, or by
>           the failure of the accused or his counsel to
>           make a timely objection to such a motion by
>           the attorney for the Commonwealth . . . .

Under the agreement on detainers, the court, for good cause shown, may grant any "necessary or reasonable continuance," and extend the 120 day period. Code § 53.1-210(IV)(c).

In the present case, trial was originally set for October 25, 1995. At a motions hearing held one week before trial was scheduled to begin, appellant requested additional time to prepare pretrial motions. The defense was fully aware that a continuance on the motions would require a continuance of the trial. Upon appellant's motion for additional time, the trial date was continued until December 5, 1995. On December 5, 1995, the defense again requested and was granted a continuance, this time until January 22, 1996, to prepare for trial. Trial was again continued on motion of both parties from January 22, 1996 until February 5, 1996, the date on which it was finally held. In sum, the entire delay in the Commonwealth's failure to try appellant from October 25, 1995 until February 5, 1996 was attributable to or acquiesced in by the defense. Accordingly, none of that time is properly considered in computing whether appellant was tried within the prescriptions of Code § 19.2-243 and the agreement on detainers. See Price v. Commonwealth, 24 Va. App. 785, 789-90, 485 S.E.2d 655, 656 (1997); Jefferson v. Commonwealth, 23 Va. App. 652, 656, 479 S.E.2d 80, 81-82 (1996).

12

The relevant time period under both sections is the period from August 31, 1995 to October 25, 1995.  The trial took place well within the time prescriptions of both statutes.

### IV. SUFFICIENCY OF EVIDENCE

Code § 18.2-94 provides:
> If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon such conviction thereof he shall be guilty of a Class 5 felony.  The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.

The tools at issue in the present case are those which were contained in the "pouch" of tools found in the van.  Appellant does not dispute that the tools at issue are "burglarious tools" within the meaning of the statute.  He contends, rather, that the evidence is insufficient to support the jury's finding that he possessed the tools with intent to commit burglary.  We disagree.

> Where the sufficiency of the evidence is challenged on appeal, that evidence must be construed in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom.  In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (citations omitted).  The jury's verdict will not be set aside unless it appears to be plainly wrong or without evidence

13

to support it.  Code § 8.01-680; <u>Traverso v. Commonwealth</u>, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).  "`[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'"  <u>Collins v. Commonwealth</u>, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting <u>Schneider v. Commonwealth</u>, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)).  Where the trier of fact finds a defendant's testimony to be incredible, it is entitled to infer that the defendant lied to conceal his guilt.  <u>See</u> <u>Speight v. Commonwealth</u>, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (<u>en</u> <u>banc</u>).

Appellant contends the evidence fails to support a finding that he possessed the burglarious tools.  The tools were found near the front and between the seats of the van that appellant drove.  Although the remaining items in the van were identified as stolen, no one else claimed ownership of the pouch of burglarious tools.  Appellant further contends that there was no evidence that the tools were actually used in either of the break-ins.  To the contrary, however, the evidence showed that the lock on the door to the truck rental shop had been pried open with a device similar to one of the tools found in the pouch.  Furthermore, the statute does not require that the tools actually be used in the burglary, only that they be possessed with intent to commit burglary.

The evidence of appellant's intent to commit burglary was

14

overwhelming. The police spotted appellant near the scene of a reported burglary, driving a van matching the description of the van used in the burglary. Appellant attempted to elude the police in a high speed chase that eventually ended with appellant's arrest. At the station house, appellant reported that he was "doing his job" when the police caught him. In the van, the police found items stolen from the residence that was the subject of the burglary report, as well as items stolen from a truck rental shop the day before. Finally, the jury was entitled to disbelieve appellant's description of his role in the police chase and to infer that appellant was lying to conceal his guilt.

For the reasons stated here, we affirm the convictions.

<u>Affirmed.</u>